UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
Abdul Hakeim Thabet Ahmed,

                    Plaintiff,

-against-

United States Citizenship and Immigration
Services and United States Department of
Homeland Security,

                    Defendant.
------------------------------------------------------X

NOT FOR PUBLICATION
**ORDER**
11-cv-6230 (CBA)

**AMON, Chief United States District Judge.**

## INTRODUCTION

Plaintiff Abdul Hakeim Thabet Ahmed, a lawful permanent resident of the United States, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, to compel defendants, the United States Citizenship and Immigration Services ("USCIS") and the Department of Homeland Security ("DHS"), to disclose certain records contained in Ahmed's Alien-File ("A-File") in response to a FOIA request filed by Ahmed on December 29, 2010. Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56.[1] Ahmed opposes defendants' motion and cross-moves for partial summary judgment. For the reasons stated below, the Court grants defendants' motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff Ahmed is a Yemeni citizen and has been a lawful permanent resident of the United States since 1990. (Ahmed Dec. ¶ 2.) On July 3, 2008, Ahmed submitted an N-400 naturalization application seeking United States citizenship. (*Id.* ¶ 4.) Ahmed was interviewed by a

---

[1] Defendants also moved to dismiss Ahmed's complaint for lack of subject matter jurisdiction but subsequently withdrew this motion.

1

naturalization officer in connection with that application on February 10, 2009, but his naturalization application remains pending before USCIS. (*Id.* ¶ 5.)

On October 19, 2010, upon returning to John F. Kennedy airport from a trip to Yemen, Ahmed was served with a Notice to Appear for removal proceedings before the Immigration Court. (*Id.* ¶ 11.) Ahmed sought admission to the United States as a lawful permanent resident at that time and was questioned and investigated by United States Customs and Border Patrol ("CBP") Officer Joseph Tajes. Officer Tajes memorialized his inspection in a three-page memorandum dated October 20, 2010. (Tajes Dec. ¶ 2.) This memorandum was provided to Officer Tajes' supervisors for use in making a determination regarding Ahmed's admissibility into the United States. (*Id.*)

The October 19, 2010 Notice to Appear was subsequently withdrawn, but Ahmed was again served with a Notice to Appear on November 17, 2010. (Ahmed Dec. ¶ 12.) This superseding Notice to Appear charged Ahmed with abandoning his lawful permanent resident status by remaining outside of the United States for more than one year during a trip to Yemen from 2006-2007. (Choudhury Dec., Ex. H.) In order to defend against his charges of removal, Ahmed, through counsel, served USCIS with a FOIA request on December 29, 2010. (Ahmed Dec. ¶ 13, Choudhury Dec. ¶ 11.) The request sought all USCIS records concerning Ahmed, including Ahmed's Alien file ("A-file") and requested expedited "Track 3" processing. (Eggleston Dec., Ex. A.) On February 11, 2011, USCIS subsequently confirmed that Ahmed's FOIA request had been placed in Track 3 processing. (Choudhury Dec. ¶ 12.)

The first date of Ahmed's removal hearing took place on October 24, 2011. As of this date, Ahmed had not received any of the records he had requested. (Bardavid Dec. ¶ 7.) Ahmed's removal hearing was then continued to May 12, 2012, at which time DHS served Ahmed with additional charges of deportability. (*Id.* ¶ 8.) These additional charges claimed that Ahmed

falsified the start date of his 2006-2007 trip to Yemen on his N-400 naturalization application and in his February 10, 2009 naturalization interview.

Ahmed filed this action on December 21, 2011. In his complaint, Ahmed alleged that the defendant agencies improperly withheld documents responsive to his request, failed to timely respond to his request, and failed to make a reasonable effort to search for responsive records in violation of the FOIA. (Compl. ¶¶ 30-34.) Ahmed sought an injunction to compel defendants to expeditiously process his request, conduct a thorough search for records, and disclose the requested records in their entirety. (Compl. Requested Relief.) On January 20, 2012, approximately one month after Ahmed filed the instant action, defendants issued a partial release in response to Ahmed's FOIA request. Defendants identified 1238 pages responsive to Ahmed's request, of which 586 were released in their entirety and 135 were released in part. Defendants withheld 150 pages in full, referred 10 pages to United States Visit, and referred another 357 pages to an un-named government agency for direct response to Ahmed. (Eggleston Dec., Ex. D.) On February 10, 2012, DHS informed Ahmed that of the 10 pages referred to United States Visit, seven pages were released in full and three released in part. (Choudhury Dec. ¶ 17.)

Defendants subsequently issued partial releases in response to Ahmed's FOIA request on February 15, 2012 and July 5, 2012. (Eggleston Dec., Exs. E, F; Choudhury Dec. ¶¶ 18, 20.) As of the July 5, 2012 release, defendants had disclosed a total of 941 pages in full, 184 pages in part, and had withheld 103 pages in full. (Eggleston Dec., Ex. F, Choudhury Dec. ¶ 21.) Thereafter, on July 19, 2012, defendants filed the instant motion for summary judgment. On September 14, 2012, the day defendants filed their reply to Ahmed's cross-motion for summary judgment, defendants submitted an additional ten documents with partial redactions. (Second Choudhury Dec. ¶ 5; Letter to J. Bardavid dated Sep. 14, 2012, D.E. # 19-8.) On October 26, 2012, defendants released additional information in the first two paragraphs of two virtually

identical[2] copies of CBP Officer Joseph Tajes' memorandum on his October 19, 2012 investigation of Ahmed (the "CBP Memoranda"). (Letter to Court dated Oct. 26, 2012, D.E. # 21.)

At oral argument on November 21, 2012, the Court granted plaintiff's motion for *in camera* review of the remaining redactions in the first two paragraphs of the CBP Memoranda and of three documents related to the USCIS Fraud Detection and National Security Directorate's ("FDNS") investigation of Ahmed in connection with his naturalization application (the "FDNS documents").[3] Following *in camera* review, on November 30, 2012, the Court ordered defendants to show cause why the Court should not release three particular phrases in the CBP Memoranda. In an *ex parte* submission dated December 6, 2012, defendants responded to the November 30 Order to Show Cause. In this submission, defendants informed the Court that the Transportation Security Administration ("TSA"), an agency within DHS, has now—for the first time in this litigation—designated several portions of the CBP Memoranda as "Sensitive Security Information" ("SSI") pursuant to its authority under 49 U.S.C. § 114(r) and 49 C.F.R. § 1520(b).[4] (Hoffman Dec., D.E. # 28, 31-2, ¶¶ 2, 7, 10.) As a result, defendants now argue that these phrases must be withheld pursuant to 49 U.S.C. § 114(r), TSA regulations prohibiting disclosure of SSI,[5] and FOIA Exemption (b)(3), which allows the government to withhold information otherwise exempt from disclosure by statute. 5 U.S.C. 552(b)(3).[6] (Def.'s Resp. to Order to Show

---

[2] The CBP memoranda are identical in substance except that one document contains the signature of CBP Officer Joseph Tajes. *See* Tajes Dec. ¶ 1; Eggleston Dec., Ex. G, at 12, 61 (Doc. Nos. 63-65 and 1116-1118).

[3] *See* Eggleston Dec., Ex. G, at 21, 24-25 (Doc. Nos. 127-28, 131-32, 133-41).

[4] Section 114(r) of Title 49 of the United States Code states in pertinent part: "Notwithstanding Section 552 of Title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under the authority of the Aviation and Transportation Security Act . . . if the Under Secretary decides that disclosing the information would . . . be detrimental to the security of transportation." Pursuant to this statute, the TSA may designate certain types of information as "Sensitive Security Information" ("SSI"). 49 C.F.R. § 1520.5(b).

[5] *See* 49 C.F.R. § 1520.15(a) (Except as otherwise provided in this section, and notwithstanding the Freedom of Information Act (5 U.S.C. 552) . . . records containing SSI are not available for public inspection or copying, nor does TSA or the Coast Guard release such records to persons without a need to know.").

[6] Exemption (b)(3) exempts matters that are "specifically exempted from disclosure by statute" if the statute (A) requires either "(i) that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld,"

4

Cause dated Dec. 12, 2012. D.E. # 28, 31.) Upon Ahmed's request, the Court ordered defendants to file redacted copies of the *ex parte* submission, which defendants did on December 12, 2012. On December 21, 2012, Ahmed withdrew its cross-motion for summary judgment with respect to the particular portions of the CBP Memoranda that were the subject of the Court's November 30, 2012 Order to Show Cause.

## DISCUSSION

*I. Standard of Review*

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must "view the evidence in the light most favorable to the party opposing summary judgment, [] draw all reasonable inferences in favor of that party, and [] eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). When deciding cross-motions for summary judgment, the "court must evaluate each party's motion on the merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

The FOIA "strongly favors a policy of disclosure," and requires the government "to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act." *Brennan Center for Justice at NYU Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) (internal citations omitted). Consistent with FOIA's policy of full disclosure, these exemptions are to be "narrowly construed with doubts resolved in favor of full

---

and (B) "if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3). Exemption (b)(3) offers "Congress an established, streamlined method to authorize the withholding of specific records that FOIA would not otherwise protect," including records relating to "national security information and other sensitive materials." *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1271 (2011). Several courts to consider the issue have concluded that 49 U.S.C. § 114(r) qualifies as an Exemption (b)(3) withholding statute. *See Skurow v. U.S. Dep't of Homeland Sec.*, 2012 WL 4380895, at *8 & n. 7 (D.D.C. Sep. 26, 2012) (collecting cases).

disclosure." *Halpern v. FBI*, 181 F.3d 279, 287 (2d. Cir. 1999) (internal quotations omitted). The Court reviews an agency's decision to withhold information *de novo*. 5 U.S.C. § 552(a)(4)(B). Nevertheless, courts apply a "principle of deference to the executive in the FOIA context when national security concerns are implicated." *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003).

*II. Merits*

The scope of this action has narrowed considerably since the time Ahmed filed his complaint. Ahmed has withdrawn his claim that defendants failed to conduct a reasonable search for responsive records, (Pl. Mem. at 10 n. 5), and concedes that defendants' subsequent responses to his FOIA request mooted his claims relating to the timeliness of defendants' response. (Letter to Court from N. Choudhury dated May 4, 2012, at 2 n. 2.) Accordingly, the parties' cross-motions for summary judgment are now limited to Ahmed's claims of improper withholding with respect to (1) the redactions in the first two paragraphs of the CBP Memoranda not subject to the Court's November 30, 2012 Order to Show Cause, and (2) the entirety of the three FDNS documents. (*See* Pl. Reply at 1 & n. 1; Pl. Resp. to Order to Show Cause dated Dec. 21, 2012.)

Ahmed argues that the withheld information is "manifestly important to [his] ability to defend himself against removal charges and to know what information about him the government is considering in adjudicating his pending naturalization application." (Pl. Reply at 1.) Ahmed contends that defendants have improperly invoked two statutory exemptions to justify these withholdings, "Exemption (b)(5)" and "Exemption (b)(7)(E)." 5 U.S.C. § 552(b)(5), (7)(E).[7] In the alternative, Ahmed argues that to the extent any of the information in these doc-

---

[7] Ahmed does not challenge defendants' assertion of Exemption (b)(7)(C) over the names of government employees in any of the documents, (*see* 5 U.S.C. § 552(b)(7)(C); Pl. Mem. at 11 n. 8). It is unclear whether Ahmed challenges the government's assertion of 49 U.S.C. § 114(r) and Exemption (b)(3) over the portions of the CBP Memoranda designated as SSI but *not* subject to the Court's November 30, 2012 Order to Show Cause. The Court need not address this issue, however, because that information is subject to withholding under another FOIA exemption.

6

uments is, in fact, exempt, defendants have failed to meet their burden of establishing that no non-exempt, segregable information can be disclosed. Upon *in camera* review, the Court finds that there is no non-exempt, reasonably segregable information in the withheld material at issue.

Exemption (b)(7)(E) exempts "records or information compiled for law enforcement purposes," only if disclosure would reveal either (1) "techniques and procedures for law enforcement investigations," or (2) "guidelines for law enforcement investigations" if disclosure of such guidelines "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Allard K. Lowenstein Int'l Human Rights Proj. v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) ("risk of circumvention" clause modifies only "guidelines" and not "techniques and procedures," which have "categorical protection . . . without need for demonstration of harm"). "Law enforcement" as used in Exemption (b)(7) extends to national security-related government activities. *See Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926 (records were "compiled for law enforcement purposes" where the agency was investigating a "violation of federal law as well as a breach of this nation's security"); *Sussman v. U.S. Dep't of Justice*, 03-cv-3618, 2008 WL 2946006, at *8 (E.D.N.Y. Jul. 29, 2008) (to satisfy Exemption (b)(7)'s "law enforcement purpose" threshold, the agency's "activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security" (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982)). Exemption (b)(7)(E) is limited to "techniques and procedures not generally known to the public." *Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 52 & n. 4 (2d Cir. 1985).

Exemption (b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption (b)(5) encompasses traditional common-law privileges against disclosure, including the so-called "deliberative process privilege," which

shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (internal quotation marks omitted). This deliberative process privilege protects inter- or intra-agency documents that are both (1) "predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision," and (2) "deliberative, *i.e.*, actually ... related to the process by which policies are formulated." *Brennan Center*, 697 F.3d at 194 (quoting *La Raza*, 411 F.3d at 356 (quotations omitted)).

### A. *FDNS Documents*

Upon reviewing the three FDNS documents *in camera*, the Court finds that defendants properly invoke Exemptions (b)(5) and (b)(7)(E) to withhold these documents in full. The first of these documents is a series of e-mails dated June 24, 2009 through August 4, 2009 between FDNS headquarters and the USCIS-FDNS Detroit field office (the "DHS E-mails").[8] In these e-mails, the field office requests information from headquarters relevant to the field office's adjudication of Ahmed's N-400 naturalization application.[9] The e-mails also discuss FDNS techniques and procedures for vetting and for processing applications of subjects that may pose a national security concern. The second document is an interoffice memorandum from an immigration officer in the USCIS-FDNS Detroit field office to FDNS headquarters dated September 21, 2009 (the "September 21 Memorandum"). In this document, the immigration officer makes a

---

[8] Plaintiffs accurately note that defendants did not originally invoke Exemption (b)(7)(E) over the DHS emails, instead raising it for the first time in their reply brief. *See* Eggleston Dec., Ex. G., at 25 (citing (b)(5) and (b)(7)(c) only); Def. Reply at 10; Second Eggleston Dec. ¶ 7. Nevertheless, the Court disagrees that the absence of (b)(7)(E) in the Vaughn index bars defendants from now asserting it. The case Ahmed cites from the D.C. Circuit, *Maydak v. Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000), stands for the proposition that the "Government generally waives any FOIA exemption it fails to raise at the initial proceedings before the district court." *August v. FBI*, 328 F.3d 697 (D.C. Cir. 2003). The rule is premised on the twin goals of preventing agency actions that result in delay and preventing the agency from "playing cat and mouse" by "waiting until after the district court has decided the case" to claim a new exemption. *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009). Defendants raised this exemption prior to oral argument on this motion, and so the Court finds that these concerns are not implicated.

[9] FDNS is a Directorate within USCIS. USCIS and its FDNS Directorate have local "field" offices around the country. In this case, the USCIS Detroit field office is the local adjudicative authority responsible for deciding Ahmed's naturalization application. *See* Nov. 21, 2012 Oral Arg. Tr. at 4, 9. The local FDNS Detroit field office is located within the USCIS Detroit field office. *Id.* at 12.

formal request for assistance from headquarters to receive the same information requested in the e-mail correspondence. The final document is a statement of findings issued by FDNS headquarters to the USCIS-FDNS Detroit field office in response to the September 21, 2009 request for assistance (the "Statement of Findings"). This document discusses databases queried and results of those searches, a finding on the issue of Ahmed and national security, and a recommendation for how the field office should consider the information obtained in adjudicating Ahmed's naturalization application. The Statement of Findings does not provide a final or binding decision on how the field office should dispose of Ahmed's naturalization application.

Exemption (b)(5) applies to all of these documents. Each of the FDNS documents is predecisional, as each contains content intended to "facilitate an identifiable final agency decision"—Ahmed's naturalization application—by requesting or providing information related to Ahmed and national security. *Brennan Center*, 697 F.3d at 202. These documents also are clearly deliberative, as the field office needed to obtain the information requested from FDNS headquarters before adjudicating Ahmed's naturalization application, and the response provided by headquarters was recommendatory in nature. *Id.* ("A predecisional document will qualify as deliberative provided it . . . formed an essential link in a specified consultative process, reflects the personal opinions of the writer rather than the policy of the agency, and if released would inaccurately reflect or prematurely disclose the views of the agency" (internal quotations and ellipses omitted)); *Costal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The Court rejects Ahmed's contention that these documents contain non-privileged "secret" or "working" agency law. (Pl. Reply at 9 (citing Second Eggleston Dec. ¶¶ 6, 7 (stating that the September 21 Memorandum contains "an opinion as to the relationship between the vetting process and adjudication of the naturalization application," and that the DHS emails "provide an opinion on the relationship between national security concerns and the adjudication of

the application"))). Ahmed is correct that agencies are not permitted to invoke the deliberative process privilege to withhold from the public informal, internal policies and procedures that amount to "working" agency law. *Coastal States*, 617 F.2d at 867; *see also Brennan Center*, 697 F.3d at 199 ("If an agency's memorandum or other document has become its 'effective law and policy,' it will be subject to disclosure as the 'working law' of the agency."). However, any opinions provided in these documents appear to the Court to reflect the subjective opinion of the individual author and not of the agency itself. *See Brennan Center*, 697 F.3d at 194 (the deliberative process privilege protects "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999))). Consequently, the Court finds that these documents "more closely resemble the type of internal deliberative and predecisional documents that Exemption [(b)]5 allows to be withheld[] [than] the types of documents that [FOIA Section 552(a)(2)] requires be disclosed." *Brennan Center*, 697 F.3d at 202; *see* 5 U.S.C. § 552(a)(2) (requiring disclosure of "final opinions," "statements of policy and interpretations which have been adopted by the agency," and "administrative staff manuals and instructions to staff that affect a member of the public"). The documents do contain content setting forth agency techniques for vetting subjects that might pose a national security threat, as well as procedures applicable to adjudicating applications by such individuals; however, the Court finds that these techniques and procedures serve law enforcement purposes and therefore are protected by Exemption (b)(7)(E), not Exemption (b)(5). *See Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926. Therefore, the "working law" exception to Exemption (b)(5) does not apply to such content.

To the extent there is any purely factual or otherwise non-exempt material in these documents, the Court finds that such material is "inextricably intertwined" with exempt material, such that disclosure would "compromise the confidentiality" of protected information. *Hopkins v.*

10

*U.S. Dep't of Housing and Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991) (citing *E.P.A. v. Mink*, 410 U.S. 73, 91-92 (1973) (superseded by statute on other grounds)); *see* 5 U.S.C. § 552(b). The Court therefore finds it appropriate to withhold these documents in full.

B. *The CBP Memoranda*

As Ahmed has now withdrawn its partial cross-motion for summary judgment with respect to the information identified in this Court's November 30, 2012 Order to Show Cause, the Court finds that defendants properly withhold the remainder of the redactions in the CBP Memoranda pursuant to Exemption (b)(7)(E).[10]

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in its entirety and Ahmed's partial cross-motion is denied.[11] The Clerk of Court is directed to enter judgment in favor of defendants and close this case.

SO ORDERED.

Dated: January 2, 2013
Brooklyn, N.Y.

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge

---

[10] As such, the Court need not address whether defendants properly withhold the portions of the CBP Memoranda designated as SSI but not subject to the Court's November 30, 2012 Order to Show Cause pursuant to 49 U.S.C. § 114(r), 49 C.F.R. § 1520.5(b), and Exemption (b)(3).

[11] The Court, however, cautions the defendants that piecemeal production of documents and belated assertion of exemptions wastes the time of both the Court and the parties.

11